1. That defendants' motions to dismiss are denied;

2. That these matters are remanded to ITA for further proceedings in connection with its administrative review of the countervailing duty determination and order conducted pursuant to section 751 covering imports of leather wearing apparel from Mexico (48 Fed. Reg. 13474 (March 31, 1983));

3. That within 30 days of the service of this order: ITA shall review as part of the administrative record in these matters the zero deposit rate certifications pertaining to Confecciones received by ITA on April 21, 1983 and any matters pertinent thereto; and ITA shall publish in the Federal Register supplemental final results of its administrative review published on March 31, 1983 (48 Fed. Reg. 13474). Certified copies of said supplemental final results shall be transmitted to the Clerk of the United States Court of International Trade and also shall be served upon plaintiffs.

4. That the temporary injunctions are extended to 20 days after final disposition by the Court following remand.

MICHELIN TIRE CORPORATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75-9-02467

Before WATSON, *Judge.*

(Decided December 22, 1983)

*Windels, Marx, Davies & Ives (Paul Windels, Jr.* and *John Y. Taggart* of counsel) for plaintiff.

*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director Commercial Litigation Branch *(Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch; *Berniece A. Browne,* Senior Trial Counsel, Office of the Assistant General Counsel for Import Administration, U.S. Department of Commerce) for defendant.

*Frederick L. Ikenson,* P.C. *(Frederick L. Ikenson* of counsel) as *amicus curiae.*

WATSON, *Judge:* In this opinion the Court, for the third time, approaches the question of the valuation of certain cash grants received by Michelin Canada, a tire producer. These grants were part of the basis for the assessment of countervailing duties on x-radial steel belted tires produced by Michelin Canada and imported by plaintiff, Michelin Tire Corporation. In its first decision on the subject, the Court, among other things, found that the grants were no longer linked to the repayment of certain loans and therefore should not have their benefit allocated over the period of the loans. The Court remanded the question of the proper allocation period. *Michelin Tire Corp.* v. *United States,* 2 CIT 143 (1981). In the next opinion, the Court disapproved the method by which the International Trade Administration of the Department of Commerce (ITA) had allocated the face value of the grants over *half* the useful life of the assets which they were used to purchase. *Michelin Tire Corp.* v. *United States,* 4 CIT 252 (1982). The Court criticized the method as an arbitrary allocation of benefit. The Court remanded the matter again and spoke approvingly of a method which would recognize the time value of money over the life of the assets purchased. In the latest administrative determination the ITA has used a method which takes into account the time value of money. It incorporates this method into a calculation known as the present value of an annuity, a technique which has its most familiar use in the calculation of the standard home mortgage repayment schedule.

The Court, although it approves the recognition of the time value of money, finds the annuity method used by the ITA to be incorrect for use in the valuation of these grants. As will shortly be discussed, the method creates an imbalance between the real subsidy and the calculated subsidy in each year.

When the Court, in its last opinion, suggested reliance on accepted principles of accounting, or financial analysis, it did not expect to find a tailor-made formula for these particular investigative circumstances. It sought only such reasonable techniques as would accomplish the fundamental purposes of the law. These techniques cannot be allowed to cause significant deviations from the basic correspondence of the subsidy to the benefit. In these matters, the Court will continue to place its ultimate reliance on essential prin-

ciples of reason and law, drawing on the special techniques of other areas only to the extent that they remain useful tools in the traditional, common-sense interpretation and application of the law.

The ITA determined what series of equal, annual amounts spread over the life of the assets purchased with the grant would yield a grand total equal to all the present values of the grant money if the grant was divided equally over the life of the asset, but expressed in each year as amounts whose future value is kept equal in real terms to the original present value by means of the addition of interest. In other words, it determined what the future value of the annual divisions of the money granted would have to be in order to maintain the complete present value of the grant and then divided that sum into equal portions over the life of the asset purchased with the grant.

This method can be expressed in the formula

$$PV = a \left[ \frac{1}{(1+r)^0} + \frac{1}{(1+r)^1} + \frac{1}{(1+r)^2} + \ldots + \frac{1}{(1+r)^{n-1}} \right]$$

where "PV" equals the grant amount in the year of receipt and "a" equals the unknown amount of an annual annuity payment. Within the bracketed section each fraction represents one year's portion of the discounting of a series of payments as discounted in accordance with "r," the interest factor, over "n," the number of years. As written, each fraction can be viewed as showing the annual reduction which occurs in a given sum if the interest rate contained in the numerator is assumed. The entire series of fractions provides a total of all the discounting that will occur during the time period in which receipt of benefits will occur. For a sum of benefits to retain the present value known and expressed as "PV" when divided over the years, it must equal the unknown "a" as multiplied or "affected" by the sum of the fractional reductions anticipated. The equation can then be solved for the unknown "a," which will be that equal annual amount, which, when subjected to the anticpated discounting expressed in the interest factor, has a present value in the amount desired—in this case the amount granted.

The method is criticized by plaintiff. Plaintiff first argues that the method should not have been adopted without compliance with the rule-making requirements of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* It also argues that the method is an unlawful, retroactive application of an administration rule.

Those arguments have no merit. This Court's Order of Remand set the terms for the ITA's determinations and did not require or contemplate rulemaking. The ITA's methodology arises from its investigative obligations in the particular case and need not be made the subject of a separate proceeding. See *NLRB* v. *Bell Aerospace*

*Company,* 416 U.S. 267, 290–95 (1973). It need not be a continuation of previous administrative practices. In any event, the parties had a full opportunity to comment and provide information during the administrative proceeding. The substantive requirements of fairness have been satisfied.

With regard to the method itself, plaintiff criticizes the annuity technique as unlawfully and disproportionately offsetting the subsidy in the earlier years. The method is also criticized for overstating the interest rate used to maintain the value of the grant over the years, for failing to use the interest rate at the time of the drawdown of the funds, and for failing to take into account that after-tax benefits would tend to reduce the real rate of interest paid by a corporate borrower and should therefore reduce the rate of interest applied to the grant to maintain its value over the years. In general, plaintiff criticizes the method as leading to the assessment of duty on more than the face value of the grant, in violation of 19 U.S.C. § 1303 and in violation of Article 4.(2) of the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade (GATT).

*Amicus* criticizes the results but refrains from urging a further remand on the ground that its arguments could only result in the necessity for the determination of a higher rate of duty—the collection of which is barred in any event by case law. *Beacon Cycle and Supply Co.* v. *United States,* 81 Cust. Ct. 46, C.D. 4764 (1978).

*Amicus'* criticisms are directed to what are, in its view, harmless errors in the context of this proceeding, i.e., the failure of the Department of Commerce to use realistic interest rates in its calculations and its failure to adopt a method which calculates the avoidance of future interest payments as a present benefit.

The Court finds it necessary to go forward to state its views with respect to the correctness of the ITA methodology because it cannot say with certainty that the faults it finds will result in an uncollectable higher rate of duty.

# I

According to plaintiff, the time value of a grant, if it is to be calculated, should be done as if the portions of the grant allocated to future years (over the life of the asset they purchase) were earning interest until they materialized into the asset in the year of their allocation. Thus, the benefit is expressed as increasing amounts over the years in accordance with the effect of a prevailing compounded rate of return on the equal portions allocated to each year. The method preferred by plaintiff yields the following table for an example in which a $10,000 grant is used to purchase an asset with a life of ten years and $1000 of the grant is allocated to each of the ten years.

Table I

| Year | Compounded rate of return | Amount to be countervailed |
|------|---------------------------|----------------------------|
| 1 | $(1.1)^0 = 1$ | $1,000 |
| 2 | $(1.1)^1 = 1.1$ | 1,100 |
| 3 | $(1.1)^2 = 1.21$ | 1,210 |
| 4 | $(1.1)^3 = 1.331$ | 1,331 |
| 5 | $(1.1)^4 = 1.464$ | 1,464 |
| 6 | $(1.1)^5 = 1.611$ | 1,611 |
| 7 | $(1.1)^6 = 1.772$ | 1,772 |
| 8 | $(1.1)^7 = 1.949$ | 1,949 |
| 9 | $(1.1)^8 = 2.144$ | 2,144 |
| 10 | $(1.1)^9 = 2.358$ | 2,358 |
| Total | | 15,939 |

Plaintiff argues that on these terms a company would be indifferent to the receipt of the original total grant or the annual allocations of the grant amounts in each year, over the years. According to plaintiff this demonstrates that the full time value of the grant will be recaptured by this method and the company will receive no greater benefit from the original total than from the later allocations.

As will shortly be discussed in detail, the real benefit to the company is not an abstract investment which it could make at a prevailing rate of interest. The benefit of the grant is the elimination of the costs of the commercial alternatives. The real question is to discover what would make a company indifferent to the opportunity to obtain capital assets for nothing. The plain answer is that only a method which applies to the gift the costs of the most likely commercial alternative can accomplish this purpose. That method must be one which approximates as accurately as possible the costs of the most likely alternative and, in attributing those costs to the grant, eliminates any direct preference which could exist between the grant and the alternative.

With this in mind, the Court turns to the two principal questions in the case, the ITA's use of an annuity method and the time value or interest factor which must be used in correctly valuing the grants in issue.

## II

The method derived from the present value of an annuity is not in accordance with the law. It does not correspond to the subsidy benefit within the annual period most suited for the determination and assessment of countervailing duties. It does not accurately ex-

press the benefit in each year in the manner in which the genuine commercial alternatives available to a company would be expressed. In effect, it is an unjustified equalization of amounts which should be different in each year in accordance with the different effects which time has on the money granted and the different adjustments which have to be made to balance those effects over the time the grants are providing benefits.

The practical effect of the annuity method can be seen in the $10,000 example earlier discussed. The method used by the ITA[1] yields the amount of $1,480 to be countervailed in each of the 10 years, yielding a total of $14,800.

The Court understands the law to require a correspondence between the duty and the benefit, in accordance with the most likely commercial alternatives. The annuity formula does not accurately express the benefit in those terms. The fact that it may be easy to administer and understand does not overcome this basic flaw.

### III

On the subject of the interest factor to be utilized in the calculation of the benefit the ITA has erred by deliberately trying to treat that important element of benefit in a neutral manner.

The benefits which must be withdrawn by payment of duty in the case of a subsidy are the benefits which result as a direct consequence of the subsidy. For a business, the direct consequences of receiving a gift of money normally are the elimination of the necessity of looking elsewhere for those funds and paying the price re-

---

[1] The ITA calculation of the annual amount of countervailing duty is done as follows in accordance with the formula set out in the text of the decision.

$$\textit{Step 1}\ \$10,000= \frac{x}{(1.1)0}+\frac{x}{(1.1)1}+\frac{x}{(1.1)2}+\frac{x}{(1.1)3}+\frac{x}{(1.1)4}$$

$$\frac{x}{(1.1)5}+\frac{x}{(1.1)6}+\frac{x}{(1.1)7}+\frac{x}{(1.1)8}+\frac{x}{(1.1)9}$$

$$\textit{Step 2}\ \$10,000= \frac{x}{1}+\frac{x}{1.1}+\frac{x}{1.21}+\frac{x}{1.331}+\frac{x}{1.4641}$$

$$\frac{x}{1.6105}+\frac{x}{1.7716}+\frac{x}{1.9487}+\frac{x}{2.1436}+\frac{x}{2.3579}$$

$$\textit{Step 3}\ \$10,000=X+.9091X+.8264X+.7513X+.6830X+.6209X+.5645X+.5132X+.4665X+.4241X$$

$$\textit{Step 4}\ \$10,000=6.7590X$$

Solution $1,480=X

quired by the alternative source of funds. The normal alternative sources of funding for business enterprises are two—the sale of shares in the business, carrying with it the obligation to share the profits, or the incurring of debt, carrying with it the obligation to repay the creditor with interest.

When a benefactor bestows a subsidy on a business, a fundamental and minimal part of the benefit is the elimination of the consequences to the beneficiary of the most likely alternative. In the case of a company with an ability to utilize alternative financing methods it will ordinarily be the duty of the administrative agency to determine, on the basis of the evidence, what alternative method would be used. In this case, which has been tried *de novo* by the Court, the Court finds from the evidence of record, that in the circumstances of Michelin Canada the alternative method of obtaining the funds in question would have been by debt financing.

The final question now turns to the interest factor used by the ITA in its attempt to incorporate the time value of money into its calculation of the subsidy. The basic flaw in the method used is the assumption that the movement of money through time is a neutral and abstract exercise in these matters. However, when properly viewed as a substitute for alternative methods of financing, the value of money given to a beneficiary is directly related to the cost of those alternatives to that particular beneficiary. To the extent that the grant relieves the beneficiary of the need to obtain alternative financing, it is the interest rate associated with that alternative which is the real and ascertainable benefit.

If this is not done, we have the unacceptable situation in which the effect of the most complete and generous form of subsidy—the outright grant—is measured by a looser standard than the less beneficient forms such as loans at preferential rates. A grant to a business is a gift which, in its very nature includes and surpasses the benefits of a preferential loan. The purity of the benefit bestowed by a grant should not immunize it from measurement in the most reasonable commercial terms. This measurement must be specific for each recipient in order for it to be reasonable within the intendment of the countervailing duty law. See H.R. Rep. No. 96–317, 96th Cong., 1st Sess. 74,75 (1979).

The use by the ITA of a rate of interest derived from long-term Canadian government bonds was flawed and not in accordance with the law, because it was not based on a finding of fact that Michelin Canada would have had to pay that rate for alternative financing.

It is a countervailing duty law that we are interpreting and, in its very nature, it must focus on the effect of subsidies on particular beneficiaries. This is not a law in which basic differences between grant recipients can be overlooked or elided for the sake of administrative convenience. The value of money, expressed in

terms of interest is too significant a part of a benefit to be homogenized for all beneficiaries.

Ordinarily, it will be the duty of the ITA to determine, on the basis of the evidence, what would have been the cost to the beneficiary of the most likely alternative—in this case, the interest rate for debt financing. Here, once again because the Court has tried this case *de novo,* the court decides one element of the interest rate determination based on the record, namely, that the alternative financing would have taken place in the Swiss bond market. The determination of the exact rate is left for the expertise of the ITA based on evidence which it has, or may obtain, regarding the interest terms which would been applied to the alternative financing.

When the interest rate on the alternative financing is applied to the grant in a manner which expresses the value of the grant over the years of its usefulness and maintains a correspondence to the benefit in each year, the statute will be satisfied.

At this point, the Court, based on the record in this case, including particularly the record on remand and the subsequent briefs, is finally in a position to determine a suitable method for valuation of the grants involved in this action.

The Court holds that for its purposes in deciding this action the correct method of valuing the subsidy provided by these grants is the following: The principal amount of the grant is allocated on a straight-line basis over the life of the asset it was used to purchase. To that amount in each year is added the interest expense in accordance with the interest which the beneficiary would have to pay on the remaining balance of the principal in accordance with the normal commercial financial practices. This method can be expressed in a formula as follows:

$$ B = \frac{P}{n} + r \left[ P - (x-1) \left( \frac{(P)}{n} \right) \right] $$

B is the amount of benefit which must be countervailed in a given year. That amount is equal to "P," the face amount of the subsidy divided by "n," the number of years over which the benefits of P will be experienced (yielding the annual amount of principal) *plus* the amount of "r," (interest) that would be owing on the principal not yet allocated, which unallocated principal is expressed as the original face amount "P," less the number of annual principal amounts

$$ \frac{\text{"P"}}{n,} $$

times "x−1," the full years which have passed since the bestowal of the grant, ("x" being the year for which the calculation is being made).

This formula, although it does not achieve an Einsteinian simplicity, expresses the benefits in the most realistic possible commercial terms. It maintains a correspondence between the actual benefit and the amount to be countervailed at all points in the history of the benefit. It represents the fairest and most reasonable method of determining the benefit which flows from the grants involved in this action.

## IV

The refinements in method which plaintiff would like to see, if indeed an interest factor is to be utilized, are not required by the law.

Plaintiff argues for the inclusion of after-tax considerations in the calculation of the subsidy. This would require a calculation of the tax deduction which would theoretically result from the payment of interest on alternative financing. That would reduce the cost of the alternative financing, reduce the benefit of taking a grant, and thereby reduce the subsidy. In short, plaintiff argues that the tax advantages of alternative debt financing ought to be considered to reduce the advantage which the outright grant bestows.

This argument cannot be accepted because it takes the administration of the law into the area of secondary effects. These effects are too uncertain to be considered a necessary part of a subsidy calculation in these circumstances. The Court notes that Michelin Canada paid no taxes during the period involved in this case.

Plaintiff also argues that the rate of interest should be determined as of the dates the money was actually received rather than the date of the agreements and further, that interest rate calculations should be made on a monthly rather than yearly basis. These are also matters which do not amount to requirements of the law. The date on which a party receives money has no particular relation to the time of measurement of its commercial alternatives and the interest rate attached to those alternatives. As for monthly interest rates, the annual period can certainly be preferred for reference to transactions which are normally measured in annual terms. For transactions of these types a year is a normal and reasonable period of measurement.

Plaintiff claims that a method which goes beyond the face value of a grant violates the terms of the countervailing duty law, which in 19 U.S.C. § 1303 speaks of a duty "equal" to the net amount of the grant. Plaintiff also claims that the method violates the provision of GATT which makes it impermissible for a signatory to impose a countervailing duty in excess of the amount of the subsidy found to exist. Article 4.(2) of the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the GATT.

The Court does not read the language of the law or the international agreement as requiring that the valuation of subsidies be

limited to their face value. On the contrary, the law and the international agreement obviously foresee a process of measurement.

No authority has been cited for the proposition that a grant whose benefit is to be experienced over a term of years is permanently fixed in the exact form and amount in which it is initially bestowed. The reality of financial experience is that money is affected by time and those methods which reasonably adjust to this commercial reality do nothing more than preserve and express the full meaning of the original financial transaction. For this reason the Court finds that a method of providing for the time value of money is in harmony with the law and with the relevant international agreements.

For the reasons expressed herein, and due to the possibility that the Court's decision may result in a reduction of the countervailing duty, this action is remanded to the ITA for further proceedings in accordance with this opinion. The parties are directed to confer with each other and attempt to agree on a schedule for proceeding on remand and for reporting the results to the Court. If the parties cannot reach agreement within 30 days the Court will order a schedule for further proceedings.